UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE
CO. et al.,

       Plaintiffs,                        Case No. 4:22-cv-12736

v.                                         Honorable Susan K. DeClercq
                                                United States District Judge

AYMAN TARABISHY, M.D., PLLC
and AYMAN TARABISHY, M.D.,

       Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 54)**

In this civil RICO case, Plaintiffs Allstate Insurance and its affiliates accuse Dr. Ayman Tarabishy and his medical clinic, Enhance Center (formally Ayman Tarabishy, M.D., PLLC) (collectively, "Tarabishy"), of running a racketeering scheme to exploit Michigan's no-fault insurance law, MICH. COMP. LAWS § 500.3101 *et seq.*, by generating and submitting fraudulent medical bills for reimbursement. Tarabishy now moves for summary judgment, arguing that there is not enough evidence for a jury to find that Allstate any suffered damages. ECF No. 54. A hearing is not necessary. E.D. Mich. LR 7.1(f)(2). As explained below, the motion will be denied.

## I. BACKGROUND

Ayman Tarabishy is a licensed medical doctor who operates his own medical clinic, Enhance Center, which, in part, offers pain-management services. ECF No. 54-2 at PageID.1415–18. Tarabishy sets Enhance's price levels for various services based on the rates charged at other practices, insurers' explanations of benefits, settlement amounts paid by insurers, price assessments performed by Claims Reimbursement Specialists, LLC (CRS), and what his colleagues in the area charge for similar services. *Id.* at PageID.1512, 1516.

In late 2021 or early 2022, Allstate began investigating whether the claims Tarabishy was submitting for reimbursement were genuine. ECF No. 60 at PageID.4176. Allstate believed they were not, and so it sued, arguing that Tarabishy implemented a scheme to generate and submit falsified medical bills for reimbursement. ECF No. 17 at PageID.309–10. This alleged scheme included billing for services not rendered, falsifying medical records, illegal solicitation of patients, using a predetermined treatment protocol to inflate charges, and misrepresenting the necessity of treatment and testing. *Id.*; ECF No. 60 at PageID.4186–87.

To its Amended Complaint, Allstate attached a chart of patients and treatments billed to it by Tarabishy, ECF No. 17-2, a list of the bills that it alleges are fraudulent, ECF No. 17-3, and a chart outlining its alleged damages, ECF No. 17-4. Allstate also

produced records of checks that it wrote to Tarabishy, Enhance, and its representatives related to these allegedly fraudulent billings. ECF No. 54-14.

## II. STANDARD OF REVIEW

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See id.* at 251–52.

## III. ANALYSIS

Tarabishy requests summary judgment on all of Allstate's claims: (1) RICO violations under 18 U.S.C. § 1962(c); (2) common-law fraud; (3) payment under mistake of fact; (4) unjust enrichment; and (5) declaratory relief. ECF No. 54.

## A. Damages Arguments

Notably, Tarabishy's motion mainly challenges whether Allstate has produced enough evidence to create a genuine fact issue as to damages for each claim. *See* ECF No. 54 at PageID.1395–96. It is worth pausing to appreciate what that means: Tarabishy must show that no reasonable juror could find that Allstate suffered *any* damages related to any of its claims. That is a high bar—one that Tarabishy has failed to meet.

To start, all the above-mentioned fraud-related claims require plaintiffs to show they suffered injury: "RICO plaintiffs must show that they suffered a concrete, out-of-pocket loss of tangible property." *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 640 (E.D. Mich. 2019) (citing *Wall v. Mich. Rental*, 852 F.3d 492, 494 (6th Cir. 2017)). "Damages" are an element of a claim for common-law fraud. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998). To recover a payment made under mistake of fact, plaintiffs must have made a payment to defendants. *Gen. Motors Corp. v. Enter. Heat & Power Co.*, 350 Mich. 86 N.W.2d 257, 260 (1957). Unjust enrichment allows a plaintiff to recover a "benefit" it conferred upon the defendant. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (2006).

Here, Allstate has offered enough evidence for a reasonable jury to conclude that it suffered damages. Namely, Allstate produced evidence of the significant number of checks that it wrote to Tarabishy and his representatives for the claims at

issue in this litigation. *See* ECF No. 54-14. That money certainly counts as "a concrete, out-of-pocket loss of tangible property." *Bledsoe*, 378 F. Supp. 3d at 640. Indeed, Tarabishy tacitly concedes as much when he argues that "Allstate did not produce any *evidence* to support its damages *other than the checks* (ECF No. 54-14), many of which were not payable to Defendants or were for patients not identified in Allstate's Amended Complaint." ECF No. 68 at PageID.4839 (second emphasis added). Despite Tarabishy's best attempts, he cannot distinguish the checks from the evidence—because the checks are themselves evidence. *See* FED. R. CIV. P. 56(c)(1)(A) (noting a party may support its assertions by "citing to particular parts of materials in the record, including . . . documents"). And although Tarabishy argues that "many" of the checks were not payable to him, "many" does not mean "all," and Allstate has produced checks specifically made out to him. *E.g.*, ECF No. 54-14 at PageID.2434–66. To be sure, Tarabishy may dispute whether that evidence will, in the end, be enough to actually *prove* fraud. But at the summary-judgment stage, there is enough to submit the question to a jury.

Tarabishy resists this conclusion in several ways, none of which persuade. *First*, Tarabishy argues that Allstate's designated witness under Civil Rule 30(b)(6), Christopher Gonzales, a field analyst in Allstate's Special Investigations Unit, "was completely unprepared to testify" about Allstate's damages. ECF No. 54 at PageID.1396. Tarabishy says that Gonzales was prepared to do little more than read

from a memorandum prepared by Allstate's counsel, and that he could not testify whether Allstate had received reimbursement for any of the patients or claims at issue. *Id.* He therefore requests that Allstate be precluded from introducing evidence of its damages at trial. *Id.* at PageID.1396–97 (citing *Strategic Decisions, LLC v Martin Luther King, Jr. Ctr. for Nonviolent Soc. Change, Inc.*, 2015 WL 2091714 (N.D. Ga. May 5, 2015).

Clearly, Tarabishy disputes how responsive or helpful Gonzalez's testimony was, but that is no reason to grant summary judgment. Rather, if Tarabishy believed that Gonzales was unprepared, not knowledgeable, or willfully noncompliant, Tarabishy could have moved for sanctions under Civil Rule 37. *See* FED. R. CIV. P. 37(b)(2)(A)(ii) (noting that courts may sanction disobedient parties by "prohibiting [them] from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"). But for purposes of summary judgment, Gonzalez's testimony, along with the record evidence upon which he relied, has created a genuine issue of material fact as to Allstate's damages. *E.g.*, ECF No. 60 at PageID.4186–87.

*Second*, Tarabishy argues that Allstate may not pursue claims for which it has already been reimbursed. ECF No. 54 at PageID.1397–99. Yet Allstate responds that it does not seek damages on claims for which it has already been reimbursed. *See* ECF No. 64 at PageID.4769. Therefore, this appears to be a non-issue. In any event,

- 6 -

summary judgment is still inappropriate because there are claims that have *not* yet been reimbursed, as to which there is a triable issue of fact related to fraud. Tarabishy does not seriously contest this point.

*Third*, Tarabishy says that there are discrepancies between the damages chart produced by Allstate and the checks it relies upon as evidence, in that the corresponding checks support only $337,042.79 out of the $452,275.88 in alleged damages. ECF No. 54 at PageID.1399. Again, this argument is ill-suited for summary judgment. It neither shows that the parties agree as to all material facts, nor does it prove that Tarabishy is entitled to judgment as a matter of law on any of Allstate's claims. Rather, it suggests only that the exact value of damages is disputed, which is a jury triable issue.

*Fourth*, Tarabishy says that there are discrepancies between Allstate's fraud chart (i.e., the chart of disputed treatments billed to Allstate) and its damages chart. ECF No. 54 at PageID.1400. Tarabishy argues, without citing any legal authority, that for Allstate to recover damages, the payments it made "must have been (1) made by Allstate to Defendants, (2) "fraudulent" or "unlawful" in some respect, and (3) appear in the Fraud Chart and be supported by a check." *Id.* But again, nothing in this argument suggests that Allstate has failed to provide enough evidence to create a genuine issue of material fact as to damages. Rather this simply underscores that there is a triable issue as to the nature and extent of Allstate's damages.

*Fifth*, Tarabishy says that he knows of ten patients who litigated with Allstate and resolved their claims, but that Allstate did not identify any payment made to those patients as a result of those settlements. ECF No. 54 at PageID.1401. From this, he argues that "Allstate *is* barred by res judicata and/or collateral estoppel from attempting to recover payments" related to these patients. *Id.* Setting aside that Allstate disputes the characterization of these payments as "settlements," *see* ECF No. 64 at PageID.4772–73, Tarabishy's argument is underdeveloped, at best. Namely, he neither cites the relevant legal standards for res judicata or collateral estoppel, nor offers any real analysis as far as they are concerned. Further, he makes no effort to explain why or how this entitles him to summary judgment. This is problematic because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). Accordingly, this argument fails.

*Sixth*, Tarabishy says that Allstate identified 32 patients in its fraud chart that did not appear in its damages chart. ECF No. 54 at PageID.1401–02. From this, Tarabishy infers that "Allstate is not seeking to recover damages" as to these patients, and so "these patients are not relevant and not properly part of Allstate's

case." *Id.* Again, Tarabishy fails to show how this entitles him to summary judgment. Whether evidence is relevant and thus admissible is an evidentiary matter. *See* FED. R. EVID. 402. As opposed to a motion for summary judgment, which is "designed to eliminate trial in cases where there are no genuine disputes of material fact," the proper vehicle would be a motion *in limine*. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).

### B. Solicitation Arguments

Next, Tarabishy attempts to argue that "Allstate's claims based on improper solicitation and quid pro quo relationships . . . must be dismissed because there is no evidence" to support those allegations. ECF No. 54 at PageID.1402. Again, the argument here is thin, spanning only a paragraph. *Id.* Regardless, it appears that none of Allstate's claims is based solely on these allegations; improper solicitation is only one part of the larger and more comprehensive scheme that Allstate asserts. Tarabishy has not met his burden to show otherwise, nor has he explained how resolving this argument would entitle him to judgment as a matter of law. Because the Court declines to "put flesh on [his argument's] bones," *McPherson*, 125 F.3d at 995–96, this argument fails.

### C. Unbundling Arguments

Finally, Tarabishy argues the Court should dismiss Allstate's claims based on "unbundling"—when a provider bills separately for individual components of a procedure that are included in another billing code on the same date of service. ECF No. 54 at PageID.1404–05. He points to *Executive Ambulatory Surgical Center, LLC v. Allstate Fire & Casualty Insurance Co.*, 2022 WL 17650426, at *7 (E.D. Mich. Dec. 13, 2022), which held that even if charges were "unbundled," that fact did not render the treatment provider's invoices "completely non-compensable." Rather, treatment providers like Tarabishy "would still be entitled to a reduced payment for services." *Id.* at *8.

Tarabishy's argument lacks merit. *Executive Ambulatory* was an action under Michigan's No-Fault Act, while Allstate's claims here are based on fraud. *See* 2022 WL 17650426, at *1. That distinction is dispositive because a "fraud claim is clearly distinct from a no-fault claim." *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 448 (Mich. 2008) (describing how and why claims brought under the No-Fault Act differ from claims based on fraud). *Executive Ambulatory* is thus inapplicable, except as to possibly Allstate's declaratory-judgment claim that Tarabishy may not seek payment from it under the No-Fault Act. *See* ECF No. 17 at PageID.385–86. But even for the declaratory-judgment claim, *Executive Ambulatory* cuts against granting summary judgment because *Executive Ambulatory* recognizes that an

insurer may still argue "that an amount billed by a provider is unreasonable because they 'unbundled' their bill," and that reasonableness in this context is a jury question. *See* 2022 WL 17650426, at *8 n.5 (citing *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 814 N.W.2d 670, 681 (Mich. Ct. App. 2012)). Thus, even crediting Tarabishy's argument, there would still be a question of fact for the jury to consider, making summary judgment inappropriate.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 54, is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 9/30/2024